IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| GLADYS RENODA THOMAS and GEORGE TERRELL, for themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 2:08cv307-MHT |
| | ) | (WO) |
| BRADLEY BYRNE, in his official capacity as Chancellor of the Department of Post-secondary Education of the State Department of Education, | ) ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

OPINION AND ORDER

Plaintiffs Gladys Renoda Thomas and George Terrell brought this action pursuant to the Privacy Act, 5 U.S.C. § 552a (2000) (as enforced through 42 U.S.C. § 1983), and the Social Security Act, 42 U.S.C. §§ 4054(c)(2)(C)(vii)(I) and 408(a)(8). The complaint sought injunctive relief preventing defendant Bradley Byrne, in his official capacity as Chancellor of the

Department of Postsecondary Education, from requiring employees to submit their Social Security numbers for use in criminal background checks.[1]

The court held a hearing in this matter on April 23, 2008, the same day the complaint was filed. At the end of this hearing, by request of both parties, the court entered a final order resolving the case.[2] This order restrained Byrne from utilizing any "request for Social Security Number which does not inform that individual whether the disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it." The order also clarified that it "should not be understood to adjudicate

---

[1]. The Alabama State Board of Education maintained a policy that required criminal background checks be conducted on all applicants and current employees at each institution. To implement this policy Byrne issued a guideline which stated that all employees "shall submit ... all such personal identifying information required to complete a criminal background check ..., including full name, social security number and date of birth ...." Pl.'s Compl. Ex. B. (Emphasis added).

[2]. The final order was jointly submitted by the parties to the court as a proposed order.

2

any issues other than those raised by the complaint regarding Section 7 of the Privacy Act." Finally, the court attached a sample request form, submitted by the plaintiffs, which complied with the dictates of the final order.

This cause is now before the court on the plaintiffs' motion for attorneys' fees and expenses in the amount of $ 24,238.84. The court will award $ 17,463.84.


## I. LEGAL STANDARD FOR ATTORNEYS' FEES

In federal civil-rights litigation, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598 (2001). "Determining a plaintiff's entitlement to attorney fees entails a three-step process. First, a court asks if the plaintiff has 'prevailed' in the statutory sense. Second, the

3

court calculates the 'lodestar,' which is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area." <u>Dillard v. City of Greensboro</u>, 213 F.3d 1347, 1353 (11th Cir. 2000) (citations omitted). Finally, after making these calculations, "the court has the opportunity to adjust the lodestar to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." <u>Id.</u>

The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." <u>Norman v. Hous. Auth. of Montgomery</u>, 836 F.2d 1292, 1303 (11th Cir. 1988). This burden includes supplying the court with specific and detailed evidence from which it can determine the reasonable hourly rate, maintaining records to show the time spent on the different claims, and setting out with sufficient particularity the general subject matter of the time

4

expenditures so that the district court can assess the time claimed for each activity.  <u>ACLU v. Barnes</u>, 168 F.3d 423, 427 (11th Cir. 1999).

A fee applicant should also exercise "'billing judgment.'" <u>Id</u>. at 428 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983)).  That is, the applicant should "exclude from his fee applications 'excessive, redundant, or otherwise unnecessary [hours],' which are hours 'that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation, or experience of counsel.'"  <u>Id</u>. (quoting <u>Norman</u>, 836 F.2d at 1301) (citation omitted).

"Those opposing fee applications have obligations, too.  In order for [district] courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'"  <u>Id</u>. (quoting <u>Norman</u>, 836 F.2d at 1301).

In determining appropriate fees, the court is guided by the 12 factors set out in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), and approved in <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 91-92 (1989).[3]   These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional

_____

3. In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

relationship with the client; and (12) awards in similar cases.

## II. DISCUSSION

### a. Prevailing Party

The first question in determining a party's entitlement to attorneys' fees, pursuant to 42 U.S.C. § 1988(b), is whether the party "prevailed" in the statutory sense. "To be considered a prevailing party under § 1988(b), there must be a court-ordered material alteration of the legal relationship of the parties." Smalbein v. City of Daytona Beach, 353 F.3d 901, 904-05 (11th Cir. 2003) (internal quotation omitted). To put it more precisely, "there must be: (1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or (2) a judicial imprimatur on the change in the legal relationship between the parties." Id.

7

Byrne contends that the plaintiffs did not "prevail" because the order specifically adjudicated only the Privacy Act claim, not the Social Security Act claim. This argument misconstrues the standard.  A plaintiff need not prevail on every claim or achieve every goal of litigation in order to be considered a prevailing party. The court must only grant "at least some relief on the merits."  Here, the plaintiffs have been granted relief on the merits of the Privacy Act claim.

At its heart, the plaintiffs' complaint sought to prevent Byrne from requiring employees to submit Social Security numbers to conduct background checks, potentially invading their privacy and violating their constitutional and statutory rights.  In relief, the court issued an order restraining Byrne from requesting employees' Social Security numbers without informing them of their statutory rights, without explaining whether disclosure is voluntary or mandatory, and without informing them how the Social Security numbers will be

used.   This  order,  therefore,  awarded  relief  on  the
plaintiffs' claims <u>and</u> put a judicial imprimatur on this
change  in  the  legal  relationship.   The  plaintiffs  are
clearly the prevailing party.


### b. Law of the Case and Estoppel

Byrne  also  argues  that,  because  the  final  order
resolving  the  case  did  not  mention  attorneys'  fees,  (1)
the doctrine of the 'law of the case' prevents the court
from 'reconsidering' the question of attorneys' fees; and
(2)  the  plaintiffs  are  now  'estopped'  from  claiming
attorneys'  fees.   These  arguments  fail  on  the  merits.

"Under  the  law-of-the-case  doctrine,  [the  resolution
of] an issue decided at one stage of a case is binding at
later  stages  of  the  same  case.   The  doctrine  operates  to
preclude courts from revisiting issues that were decided
explicitly  or  by  necessary  implication  in  a  prior
appeal.... Law of the case binds not only the trial court
but this court as well."   <u>Schiavo ex rel. Schindler v.</u>

9

Schiavo, 403 F.3d 1289, 1291 (11th Cir.2005) (internal quotation marks and citations omitted; alteration in original).

This doctrine is inapplicable here.  Both parties agreed that the final order would resolve the entire case, but the order did not mention attorneys' fees in any way.  In White v. New Hampshire Dept. of Employment Sec., 455 U.S. 445, 451 (1982), the Supreme Court granted a motion for attorneys' fees even though the consent decree and judgment had been silent on the subject and White's motion came over four months after the conclusion of the case.  The Court clarified that "a request for attorney's fees under § 1988 raises legal issues collateral to the main cause of action," id., and "fee questions are not inherently or necessarily subsumed by a decision on the merits." Id. at 451 n. 13.  Applying White, it is clear that a final order, silent on the subject of attorneys' fees, does not decide the question explicitly or by inherent or necessary implication. Therefore, the law-of-the-case doctrine does not apply.

The doctrine of equitable estoppel is also inapplicable. To invoke this doctrine, the party seeking estoppel must show: "(1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation." Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1326 (11th Cir. 2008).

Byrne simply argues that, because attorneys' fees were not discussed in the afternoon hearing and because the plaintiffs agreed that all "issues" had been resolved, he could assume that the plaintiffs would not later request attorneys' fees. Such allegations simply do not give rise to a claim for estoppel. Byrne does not allege that the plaintiffs actively misrepresented any material facts, nor is there any evidence showing that

11

the plaintiffs intended him to believe they would not be seeking attorneys' fees.  As discussed above, the final order explicitly adjudicated only the Privacy Act claim, and a decision on the merits does not necessarily decide the collateral issue of attorneys' fees.  At most, therefore, Byrne has alleged misunderstanding not misrepresentation, and he cannot support his claim for estoppel.

The court also notes that, typically, disputes over entitlement to attorneys' fees in the context of a settlement on the merits arise as factual questions regarding the breadth of that settlement agreement, that is, whether the parties settled not only the merits but the fee issue too.  Here, however, in resolving the merits of this case, Byrne appears to have come to no understanding with the plaintiffs on the subject of fees. Byrne cannot now sidestep this failing by now raising arguments about law of the case and estoppel.

### c. Appropriate Fees

As this court has previously stated, the starting point in setting attorneys' fees is determining the "lodestar" figure--that is, the product of the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rate for work performed by similarly situated attorneys in the community. Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir.1988); accord Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The plaintiffs submit a request for $ 23,670.00 in attorneys' fees (78.9 hours x $ 300 per hour) and $ 568.84 in expenses for a total of $ 24,238.84.  Byrne objects to the plaintiffs' calculation of the hours and the market rate.  First, the court will address Byrne's relevant objections to the hours spent on this litigation, reducing the award calculation accordingly.  The court will then address the market rate.

13

### i. Calculation of Reasonable Hours

The court considers three of the Johnson factors in determining reasonable hours spent on this litigation: the novelty and difficulty of the case; the time and labor required; and the result ultimately obtained.  In other words, the court balances the effort against the overall success to determine the hours reasonably spent on this litigation.

Novelty and Difficulty of the Case: It stands to reason that the more novel or difficult a case, the more time it will require to do research and draft documents. The plaintiffs assert that this case is notably unusual and that there is only one Eleventh Circuit case dealing with the Privacy Act.  Indeed, this court found very few cases on point.  Therefore, even if this case were not particularly complex, research may have been more time consuming or laborious than usual.  As such, the court is prepared to accept a significant number of hours as reasonable for preparation and litigation of this case.

14

Time and Labor Required: Each attorney has submitted a calculation of the hours spent on this action.  Edward Still submits a calculation of 40 billable hours; Cecil Gardner submits 32.5 billable hours; and Sam Heldman submits 6.4 billable hours.  Byrne objects to particular calculations submitted by each attorney.

First, Byrne objects to Still's calculation of 4.3 hours spent on a "telephone conference" with the Associate Executive Secretary of the Alabama Education Association (AEA), Dr. Joe Reed.  Byrne argues that, because Reed was not a party to this action and not a lawyer, Still has failed to demonstrate that such a lengthy phone conference was necessary.  The AEA, however, paid the initial attorneys' fees in this case and Still explains that the AEA represented the plaintiffs in their efforts to lobby the State Board of Education and the Chancellor regarding the use of Social Security numbers.  As such, it appears reasonable, even necessary, that Still would engage in a lengthy discussion with the AEA before undertaking this

15

litigation so as to learn the background of the issues. Nevertheless, 4.3 hours on a conference call does strike the court as somewhat excessive, and Still has not provided sufficient detail concerning what was discussed or suggesting why so much time was needed. The calculation will be reduced by 1.5 hours.

Byrne's next objection is to Still's calculation of 2.7 hours spent reviewing a memorandum written by Byrne to the presidents of the colleges in the Alabama community college system and participating in a telephone conference with attorney Gardner regarding the theory of the complaint. Byrne points out that Gardner listed only .5 hours for this conference, which leaves Still 2.2 hours to review a one-page memo with only a short attachment. Although this memo was at the heart of the litigation, and therefore deserved careful attention, the court agrees with Bryne that 2.2 hours appears to be an excessive amount of time to spend on such a straightforward and short document. This calculation will be reduced by 1.2 hours.

16

Byrne objects to Still's entry of 1.3 hours for further research on Fair Credit Reporting and Social Security Numbers. This entry is quite vague and there is no indication how Fair Credit Reporting is an issue related to this litigation. The entry will be reduced by .7 hours.

Byrne also objects to 4.1 hours spent preparing the service documents and further revisions of the complaint. The court agrees that this entry is excessive and vague. Byrne should not be made to pay $ 300 per hour for an experienced attorney to prepare service documents, and Still does not explain how much of his time was dedicated toward that task or toward revision of the complaint. This entry will be reduced by 2 hours.

Finally, Bryne objects to Still's entry of 12.3 hours spent on this case, the day the complaint was filed, meeting with the judge, negotiating with the defendants, revising and researching the proposed order and traveling to and from Montgomery. Byrne objects that such a large entry of time should be more carefully documented; the

court agrees. Although the court does not find it unreasonable that a lawyer might spend over 12 billable hours on a case in one day, especially factoring in hearings before the court and travel to and from Montgomery, Still has not set out with sufficient particularity the general subject matter of his time expenditures so that the district court can assess the time claimed for each activity. Barnes, 168 F.3d at 427. This entry will therefore be reduced by 2 hours.

As to Gardner's fees, Byrne objects to Gardner's entry of 8 hours described as research in preparation for the court hearing, meeting with clients, and "discussions with Greg Graves and Clint Daughtrey concerning the complaint and various amendments thereto." Gardner has not explained who Graves or Daughtrey are, how long he discussed the complaint with them, or why such discussions were necessary. The court would have appreciated at least some detail in this regard, in order to determine the reasonableness and necessity of this time entry, particularly considering this is a lengthy

18

entry for one day.  The court will reduce this entry by 2 hours.

The court has reviewed the remaining hours claimed to determine if there was any other time that should be excluded because it was "excessive, redundant, or otherwise unnecessary."  <u>Hensley</u>, 461 U.S. at 434. The court is satisfied that the remaining hours appear to have been necessary to secure relief in this case.

Therefore the overall hours determination for each attorney is as follow:

| ATTORNEY | HOURS CLAIMED | REDUCTION | FINAL HOURS |
|----------|---------------|-----------|-------------|
| Still    | 40.0          | -7.4      | 32.6        |
| Gardner  | 32.5          | -2.0      | 30.5        |
| Heldman  | 6.4           | 0         | 6.4         |
| TOTAL    | 78.9          | -9.4      | 69.5        |

## ii. Calculation of Market Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience,

19

and reputation." <u>Norman</u>, 836 F.2d at 1299.  It is the plaintiff's burden to establish a claimed market rate. <u>See</u> <u>Barnes</u>, 168 F.3d at 428.  In determining the prevailing market rate in this case, the court has considered all the <u>Johnson</u> factors and will discuss those that are pertinent to this case.

<u>Customary Fee</u>: "The customary fee for similar work in the community should be considered." <u>Johnson</u>, 488 F.2d at 18.  The plaintiffs have not submitted satisfactory evidence as to the customary rate for similar work in the Middle District of Alabama.  They address this issue merely by submitting affidavits from two fellow attorneys who practice in the Middle District of Alabama and attest that $ 300 per hour is a reasonable rate.

Byrne, on the other hand, argues only that the court should look to the actual fee agreement in this case ($ 105 per hour) as evidence of the market rate.  The actual fee agreement can, indeed, be competent evidence of the market rate.  <u>See</u> <u>Dillard v. City of Greensboro</u>, 213 F.3d 1347 (11th Cir. 2000).  But, it is not relevant

in a case such as this, where the fee was merely a maintenance rate paid to the attorneys by the AEA. It is well established that an award "may not be reduced because appellants' attorney was employed or funded by a civil rights organization or tax exempt foundation." Fairley v. Patterson, 493 F.2d 508 (5th Cir. 1974); see also Johnson v. Univ. College of  Univ. Of Ala. Birmingham, 706 F.2d 1205, 1210 (11th Cir. 1983) ("This Court has held that an award of attorney's fees should not be reduced simply because counsel is receiving some compensation from third parties.)

"There is no doubt that the prevailing attorney's own customary or usual billing rate is an appropriate factor to be considered by the court; it is, however, not the sole determinative factor." Blum v. Stenson, 465 U.S. 886, 895 (1984). Still and Gardner submit affidavits asserting that they charge, generally, between $ 200 and $ 300 per hour depending on the client and the case. Heldman submits no evidence as to his customary fee,

stating only that his fees vary widely depending on the nature of the case and the client's resources.

Awards in Similar Cases:  "The reasonableness of a fee may also be considered in light of awards made in s similar litigation within and without the court's circuit."  Johnson, 488 F.2d at 719.  This court has recently awarded fees in the range of $ 160 to $ 300 per hour in other civil-rights cases, e.g., United States v. Flowers, 2007 WL 2725264 (M.D. Ala. 2007), aff'd, 281 Fed.Appx. 960 (11th Cir. 2008), cert. denied, 129 S.Ct. 763 (2008); Laube v. Allen, 506 F. Supp. 2d 9639 (M.D. Ala. 2007); Hall v. Lowder Realty Co., Inc., 263 F. Supp. 2d 1352 (M.D. Ala. 2003); and nine years ago, the Eleventh Circuit awarded Still a rate of $ 200 per hour for his work in a voting rights case in the Middle District of Alabama.  Dillard, 213 F.3d at 1355.

Skill Required to Perform Legal Services: "The trial judge should closely observe the attorneys' work product, his preparation, and general ability before the court." Johnson, 488 F.2d at 718.  Because this litigation was so

brief, the court did not have an opportunity to analyze much of the attorneys' work product or their abilities before the court.  The court notes that the attorneys, for both sides, showed an error in judgment in ignoring the question of fees while preparing the proposed final order in this case.  At the same time, the swift resolution of this matter, concluded the same day it was filed, may reveal skill and  professionalism.

The Experience, Reputation, and Ability of the Attorneys: "Most fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation. ... Longevity, per se, however, should not dictate the higher fee.  If a young attorney demonstrates skill and ability, he should not be penalized for only recently being admitted to the bar." Johnson, 488 F.2d at 718.

Both Still and Gardner have submitted evidence of their extensive legal experience and good reputations. Both have been given "very high" ratings in Martindale-Hubbel and have been named among the best lawyers in

23

their practice areas.   Still has worked on dozens of
civil-rights cases in his 30-plus years as an attorney
and has been a guest lecturer on the subject of voting
rights at Georgetown University and the University of
Virginia.   Gardner, likewise, has extensive and high-
level experience and has focused his practice on the area
of labor and employment law for over 30 years.   Heldman,
on the other hand, has provided the court with almost no
information as to his experience or reputation, nor was
the court able to observe his skill or ability in this
case.

Based on the criteria analyzed above, the court finds
that the plaintiffs' attorneys are entitled to the
following hourly rates for the time reasonably expended:

| ATTORNEY | HOURLY RATE |
|----------|-------------|
| Still    | $ 250       |
| Gardner  | $ 250       |
| Heldman  | $ 175       |

## d. Lodestar Calculation

The unadjusted lodestar figure for each attorney is as follows:

| ATTORNEY | HOURS | HOURLY RATE | TOTAL |
|----------|-------|-------------|-------|
| Still | 32.6 | $ 250 | $  8,150 |
| Gardner | 30.5 | $ 250 | $  7,625 |
| Heldman | 6.4 | $ 175 | $  1,120 |
| TOTAL | | | $ 16,895 |

## e. Adjustments to the Lodestar Calculation

"The product of reasonable hours times a reasonable rate does not end the inquiry." Hensley, 461 U.S. at 434. A court must consider any other factors--particularly the reasonableness of the fees in light of the results obtained--that may warrant an adjustment of the lodestar calculation. Id.[4]   This inquiry "is

_____

4.   Analyzing the results obtained against the amount in fees is also one of the Johnson factors. Courts may, therefore, conduct this inquiry as part of the initial process of determining reasonable hours expended on the litigation. In Hensley, however, the Court opted to conduct this inquiry post-hoc, after determining the hours and rates, so that the total dollar amount could be

25

particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." Id.

Where a plaintiff has raised "unrelated" or "distinctly different claims for relief ... based on different facts and legal theories[,]" fees should be awarded only for the hours expended on the successful claim. Id. On the other hand, a plaintiff's claims will often "involve a common core of facts ... based on related legal theories." Id. In such cases, "it can be difficult to divide the hours expended on a claim-by-claim basis. ... Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id.   Finally, where a plaintiff "has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally, this will encompass

---

balanced against the overall results obtained.  461 U.S. at 434 n.9.  The court follows that example here.

all hours reasonably expended on the litigation ...."
Id. at 435.

In this case, the plaintiffs' claims were based on
a discrete set of facts that applied to both the Social
Security Act and Privacy Act claims.  These claims were
not "distinctly different" but represented highly
"related legal theories."  They were simply alternative
legal paths to the same goal of equitable relief.  As
such, the court cannot dissever the hours expended on a
claim-by-claim basis and instead engages in an overall
analysis of the success obtained compared to the fees
requested.

The final order granted the plaintiffs essentially
all the relief they originally sought.  They came to court
for an injunction preventing Byrne from requiring
employees to submit their Social Security numbers for use
in criminal background checks.  This is exactly what they
received.  Because the plaintiffs enjoyed essentially full
success in this litigation, the fact that the order

27

adjudicated only the Social Security Act claim does not warrant a reduction of the fee award.

Byrne also argues that the plaintiffs achieved only 'nominal' success because no damages were awarded. This argument fails. Byrne is correct that, where a plaintiff's purpose is the recovery of damages, "a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992). But, this reasoning is inapposite where <u>injunctive relief</u> is the purpose of the litigation. "While the amount of damages a plaintiff recovers is certainly relevant, attorney fees need not be limited to a portion of the damages recovered." <u>Curry v. Contract Fabricators Inc. Profit Sharing Plan</u>, 744 F.Supp. 1061, 1071 (M.D. Ala.1988) (Thompson, J.) (citing <u>Riverside v. Rivera</u>, 477 U.S. 561 (1986)), <u>aff'd</u>, 891 F.2d 842 (11th Cir.1990). "[S]uccess in a civil rights case 'cannot be valued solely in monetary terms[,]'... successful civil rights actions vindicate a public interest." <u>Villano v.</u>

28

Boynton Beach, 254 F.3d 1302, 1305-06 (11th Cir. 2001) (quoting Riverside, 477 U.S. at 574); see also Williams v. Thomas, 692 F.2d 1032, 1038 (5th Cir. 1982).

In this case, because the plaintiffs never sought damages, damages are no indication of their success. As explained above, the final order granted the plaintiffs essentially all of the relief they requested, which has vindicated the rights not only of the named plaintiffs but of other employees who may otherwise have felt compelled to provide information they are entitled to keep private. As such, the fees awarded are reasonable in light of the significant results obtained, and there is no reason to make a downward adjustment to the lodestar calculation.

There is also no reason to make a upward adjustment.

### f. Expenses

The plaintiffs claim expenses totaling $ 568.84, consisting primarily of the hotel and travel costs for Still and Gardner. These expenses appear reasonable to the court and Byrne does not object to any of them.

29

Therefore, the court concludes that the plaintiffs may recover $ 568.84 for expenses.

***

Adding the lodestar calculation of $ 16,895 to the expenses of $ 568.84, the fees and expenses owed to the plaintiffs total $ 17,463.84.

Accordingly, it is ORDERED that:

(1) Plaintiffs Gladys Renoda Thomas and George Terrell's motion for attorneys' fees (doc. no. 8) is granted.

(2) Plaintiffs Thomas and Terrell shall have and recover from the defendant Bradley Byrne fees and expenses in the amount of $ 17,463.84.

DONE, this the 19th day of March, 2009.


       /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE